THE STATE *versus* THE PRESIDENT, DIRECTORS AND COM-
PANY OF THE WALDO BANK.

If the treasurer of the State, by mistake, take from a bank a sum less than
the amount of the tax, and give therefor a receipt "in full for the semi-
annual tax on the capital stock of said bank which became due" on a cer-
tain day, the State is not thereby barred from recovering the just amount.

On the petition of the Waldo Bank, the legislature accepted a surrender of
their charter, and declared that it should terminate when the act should
take effect, on March 25, 1838, but also provided in the same act, "that the
said bank shall continue in its corporate capacity for and during the term of
two years from the time this act shall take effect, for the sole purpose of
collecting the debts due the corporation, selling and conveying the property
and estate thereof, and shall remain liable for the payment of all debts due
from the same, and shall be capable of prosecuting and defending suits at
law, and for choosing directors for the purpose aforesaid, and for closing its
concerns." The bank continued to transact ordinary banking business un-
til March 25, 1838, and no longer, and on the thirty-first day of the same
month, fifty per cent. of its capital was divided among the stockholders,
*It was held*, that the bank was liable to pay the tax for the six months com-
mencing October 1, 1837.

Where the action was rightfully commenced against the bank, and a state-
ment of facts was agreed upon between the parties and signed by their
counsel, while this Court was in session and during the continuance of the
charter, and no law term of the Court was holden in the county until after
the charter had terminated, the Court, on motion of the plaintiff, ordered
judgment to be rendered as of the term. when the facts had been agreed
upon.

ASSUMPSIT to recover the amount of taxes alleged to be
due from the bank to the State. The parties, by their counsel,
agreed upon a statement of facts.

The Waldo Bank was incorporated Feb. 11, 1832, with a
capital stock of $50,000, and commenced the business of
banking under the charter on May 15, 1832, but fifty per cent.
of the capital being at that time paid in. Within thirty days
after the first Monday of October, 1832, when the whole
amount of the capital had been paid in, October 16, 1832,
they paid a tax to the treasurer of the State of $93,84; and
on April 24, 1833, another tax of $250; and on November
1, 1837, another tax of $250. Receipts were given for each
of these sums by the treasurers, or their clerks, "in full for the

semi-annual tax on the capital stock of said bank, which becomes due" on the first Monday of October, 1832, the first Monday in April, 1833, and on October 1st, 1837, respectively. The sum total of taxes paid by the bank, inclusive of these sums, was $2593,84. On August 7, 1837, the stockholders of said bank, by vote, authorized the directors to adopt measures for settling up and closing the business of the bank. The directors applied to the Legislature at the next session to accept a surrender of the charter of the bank, and to authorise them to close their concerns and divide the capital stock. The application was followed by an act accepting the surrender of the charter, which took effect on March 25, 1838. The bank transacted the business of banking under this charter in the usual way to March 25, 1838, but no longer. No tax has been paid since Nov. 1, 1837. On March 31, 1838, fifty per cent. of the capital stock of the bank was divided by the directors among the stockholders, and an order was passed to pay out the same to the several persons holding stock at that time.

The State claimed the tax alleged to have accrued on their capital stock of $50,000, since the first Monday of Oct. 1837, to the close of the time the bank was liable to pay the tax, and also the deficiency of a former tax not wholly paid. The Court were to order a nonsuit or default and enter judgment according to law.

The statement of facts was agreed upon and signed by the counsel for the parties at the December Term of the Supreme Judicial Court in this county, 1839, holden by one Judge.

At next law term in this county, holden in July, 1840, the same counsel for the bank by whom the statement of facts was signed made a written suggestion, that since the last term of the Court, the corporation, called the President, Directors and Company of the Waldo Bank, was dissolved by the expiration of the time limiting the continuance of the bank in its corporate capacity, fixed by the act of March 20, 1838.

*Emery*, Attorney General, for the State, moved for judgment as of December Term, 1839.

The Reporter was absent during the argument of this case, at the July Term, 1840, and has unexpectedly failed of receiving a sketch of the points made and authorities cited.

*Emery,* Attorney General, for the State.

*White* and *W. Kelly,* for the bank.

The opinion of the Court was by

EMERY J.— If the Waldo bank owed nothing to the State payable within ten days after the first Monday of April, 1838, this action cannot be maintained. And this is the position assumed by the defendants.

By the second section of the act, c. 456, which took effect on the 25th of March, 1838, accepting the surrender of the bank's charter, it is provided, that the bank shall continue in its corporate capacity for and during the term of two years from the time the act shall take effect, for the sole purpose of collecting the debts due the corporation, selling and conveying the property and estate thereof, *and shall remain liable for the payment of all debts due from the same,* and shall be capable of prosecuting and defending suits at law, and for choosing directors for the purpose aforesaid, and for closing its concerns.

The statute of January 23, 1821, c. 144, enacted "that the corporation of each and every bank within this State which now is or which shall hereafter come into operation, shall within ten days after the first Mondays of October and April annually, pay to the treasurer of the State, for the use of the same, a tax of one half of one per cent. on the amount of such part of the original stock as shall have been actually paid in by the stockholders in the respective banks; provided, that when the amount of the capital stock actually paid in on the said days, should not have been paid in for the full term of six months then next preceding, said bank corporation are hereby required to pay such portion of the sum of one half of one per cent. on such proportion of capital stock as shall have been paid in for the full term of six months next preceding, as the time from the payment of such portion of such capital stock to the

day when such payment of such tax shall become due may bear to the term of six months."

By the act to regulate banks and banking, c. 519, passed the 31st of March, 1831, the 16th section provides, that "*every bank shall annually pay to the treasurer of the State for the use of the same, a tax of one per centum upon the amount of its capital stock paid in*, one half of which shall be paid within ten days after the first Monday of October, and the remainder within ten days after the first Monday of April in each year. And if any bank shall neglect to pay the aforesaid tax in the space of thirty days after the same shall become due, it shall be the duty of the treasurer to issue a warrant of distress directed to the sheriff of the county in which such bank is located, or his deputy, commanding them to levy and collect the sum due from the estate and effects of such bank, which warrant shall be in the same form, *mutatis mutandis*, as warrants of distress against delinquent sheriffs are directed by law to be issued."

This act did not take effect till after the first day of October, 1831.

By the 5th section of the act to incorporate the Waldo Bank, passed Feb. 11, 1832, c. 234, it is made subject to all the duties and liabilities specified in an "act to regulate banks and banking, passed March 31, 1831."

It is insisted on behalf of the bank, that inasmuch as the statute of 1831 did not retain that portion of the provision of the act of Jan. 23, 1821, which had been construed to authorize a proportionate taxation as to the time in which the corporation was operating on capital paid in for six months, as a banking company, but imposed the tax to be paid of one per centum, one half within ten days after the first Monday of October, and the remainder within ten days after the first Monday of April, in each year, and the State had accepted the surrender of the charter by an act which took effect the 25th of March, 1838, the liability of the bank for the portion of the tax after Oct. 1, 1837, was annulled, because the ten days after the first Monday of April in the year 1838, had not arrived,

nor had even the first Monday of April, 1838, arrived, before the acceptance of the surrender. And no reservation was made in that act of the liability of the bank to the tax, as there was in the act revoking the charter of the Winthrop Bank, c. 500, passed Jan. 30, 1828. It is true, there is a provision in that act, " that nothing therein contained shall be construed or deemed to impair or annul the right of the State to exact payment of the arrears of taxes from said bank which may be due up to the 30th day of June, 1828." A similar provision was made in the act of March 20, 1821, c. 84, respecting the Castine Bank, " as to arrears of taxes then due from that bank to the State." And the like provision was retained in the act, c. 486, revoking the charter of the Passamaquoddy Bank, passed Feb. 23, 1827.

The defendants call our attention to 1 Bl. Com. 484, 485, where it is asserted that " the debts of a corporation, either to or from it, are totally extinguished by its dissolution ; so that the members thereof cannot receive or be charged with them in their natural capacity, and that it may be dissolved by surrender of its franchises into the hands of the king, which is a kind of suicide." This is rather a figurative expression, and like most rhetorical descriptions, may not, as applied to the present case, be entirely correct. It is not the only one in the beautiful writings of Blackstone, which will justify this criticism.

The bank contends, that although payment might have been made in 1832, *pro rata,* as to capital paid, in the treasurer's mode of calculation, yet there is no *pro rata* provision as to time ; that on the first Monday of April, 1838, there remained only fifty per cent. of the capital paid in, the directors having divided fifty per cent. of the capital stock on the 31st of March, 1838. And it is urged, that " by accepting the surrender of the charter, the authority of the treasurer to collect the tax became null, and there was none due; that the tax did not accrue till the first Monday in April, when the bank was not in existence ; that the tax was a bonus. If any could be claimed, it could be only on one half ; and if the treasurer took $90

State *v.* Waldo Bank.

instead of $125, it was his fault, and the defendants are discharged."

What prevented the treasurer from issuing his warrant of distress, we are not informed. That has, at least in one instance, before the separation, been the way in which the right to a tax has been brought before the judiciary. *Portland Bank* v. *Apthorp*, 12 Mass. R. 252. In this case, a more lenient course is adopted. For the State has become complainant against the bank for remissness in duty.

Some of the arguments and suggestions on the part of the defendants, proceed, as we apprehend, upon wrongly assumed principles. Though possibly they may not be destitute of some darkly shadowed analogies to cases arising upon rents and annuities. Thus, it was once held that if a tenant for life made a lease for years, and died the day before the rent was due, the rent was lost both to the executor and reversioner, and equity would not relieve. Though it was admitted to be a hard case, because the tenant had enjoyed the land out of which the rent issued.

The rule with respect to dividends in the public funds, which are made payable on certain days like rent, is that there shall be no apportionment in respect of time, for being one contract and one debt, it cannot be divided. *Clun's* case, 10 Coke, 128; 1 Salk. 66. And these dividends go to the person to whom they are due at the time. And if a person having a life interest die between the times when they are payable, there cannot be any apportionment. 2 Ves. 672; 1 Saund. 287, n. 17; 3 Atk. 260.

All banking charters are contracts between the State and the corporations who accept them. *The stipulation in the act* that a tax of one per cent. on the capital paid in, to be paid half yearly, *constitutes a debt of the highest order*. The stock actually vested is by force of the act of incorporation pledged for the payment of all the debts of the institution, and it ought not to be withdrawn until all such debts are paid. *Spear* v. *Grant,* 16 Mass. R. 9.

The debt of the bank was perfect, to be paid within 10 days after the first Monday of April, 1838. And though the charter was surrendered and accepted so far as discounting notes was concerned, it was still *continued a corporation for the purpose of paying its debts and closing its concerns.* The suicide was not complete.

Whatever of precaution the legislature might see fit to introduce into the acts relating to the Winthrop Bank, the Castine Bank, and the Passamaquoddy Bank, we see no reason to condemn. But we must consider that the omission of the like qualification in the Waldo Bank, did not release the corporation from the obligation to pay the tax due, and payable in ten days after the first Monday of April, 1838.

The tax attaches on the commencement of each year. The times of payment are arranged for mutual convenience. Such questions as have arisen, and may arise as to rents and annuities, cannot fairly arise on this subject. The State lives, though its vigor may be greatly impaired, if its revenues, which indeed contribute to its maintenance, are to be abstracted agreeably to the speculations, or interest of those corporations, who have stipulated a contribution to those revenues, for privileges accorded to them. Whether it be wise in the Legislature to press these exactions to the extent of one per cent. per annum on the capital stock of banks paid in, or be judicious in such corporations to accept the privilege on those terms, considering the great losses to which they may be subjected from failures and bankruptcies of their debtors, and unfaithfulness in cashiers, and subjection to additional taxation for the shares as private property, still exposed to all these casualties, must be left to the State and the parties.

But this corporation was in existence on the first Monday in April, 1838, and long after. It is incompetent to the corporation to deny its existence against a statute of the government, passed too, for the convenience and accommodation of the defendants. *Foster & al.* v. *Essex Bank,* 16 Mass. R. 245.

We cannot accede to the correctness of the argument, that if by mistake the treasurer take from the bank less than its

proportion of tax, that the state is thereby barred from recovering the just amount. It would be substituting the erroneous acts or opinions of the treasurer or his clerks, for the rules prescribed by the law of the land.

The rights of the parties, as we conceive, stand upon entirely different principles from cases of a penalty imposed by a statute on a party for the commission of an offence. In such a case if the statute expire before judgment the penalty is gone.

And the old law as to annuities was, that if the annuity determines *pendente lite*, there shall not be judgment for the arrearages, for the writ fails forever. Co. Lit. 285, a. ; 2 Lev. 51 ; Com. Dig. annuity, C.

And here at the July term, 1840, we are presented with the following, " *State of Maine* v. *Waldo Bank*. And now James White, who was originally retained in this action by the Directors of the Waldo Bank, suggests that since the last term of the Court, the corporation of the President, Directors and Company of the Waldo Bank is dissolved by the expiration of the time limiting the continuance of said Bank in its corporate capacity, in the act accepting the surrender of the charter of said bank, and continuing said bank in its corporate capacity for the term of two years which said act is dated March 20, A. D. 1838. " JAMES WHITE."

It is true that the act is dated as represented, and was then approved. The third section however, says that this act shall take effect and be in force from and after five days from the time of its approval by the Governor.

Whether the order of the Directors to divide fifty per cent. of the capital stock in six days after the act took effect, was in pursuance of a meeting and vote of the stockholders, is not communicated. Perhaps it was thought that the vote of the 7th of August, 1837, rendered it unnecessary. It is apparent the intention was not to delay them from the early enjoyment of this portion of their capital. And this division, which must have been on Saturday, left only the Sabbath intervening between that act and the first Monday in April, when the tax, as stated in one of the receipts introduced by the defendants,

would become due.   For all practical purposes beneficial to the institution contemplating a division of the capital, it would seem that the interest on loans for the then last six months must have been realized, and that the claim of the State would be expected to be discharged the next Monday, certainly within ten days after that time.   And we must suppose that the proper steps have been adopted by the corporation, by a just appropriation of a portion of their funds to meet so just a demand as that of the plaintiffs.

The case comes before us on a case stated and agreed in this Court at the December term, 1839.   And the conclusion says, "The Court are to order a nonsuit, or a default, and judgment for the State agreeably to law."

The suggestion now presented by the original counsel for the defendants, is intended to show that no judgment can be rendered against the defendants.   The Attorney General protests that this would not be treating the State fairly, and moves for judgment as of December Term, 1839.

In a case like the present, coming before us on a case agreed by the parties as to an action which was rightfully commenced, and correctly pending when the agreement was signed, and no law term afterwards was holden in the county till July, 1840, which shews that the plaintiffs are not in fault, we must sustain the motion of the Attorney General.

In a case so pending where an individual defendant had died, we should consider it an incumbent duty of the Court to take care that the rights of the parties should not suffer.   And the judgment should be rendered as of December Term, 1839. The following cases, *Percy* v. *Wilson*, 7 Mass. R. 393 ; *Brown* v. *Penobscot Bank*, 8 Mass. R. 445 ; *Patterson & al.* v. *Buckminster & al. Trustee*, 14 Mass. R. 144 ; we apprehend are decisively in favor of the decision which we make on this part of the subject.

The whole amount of taxes which the bank should have paid within ten days after the first Monday of April, 1838, would. be $2875,00.   The. whole amount of taxes paid by the bank is $2593,84.

On the 16th of Oct. 1832, there should have been paid to the treasurer of the State, $125,00, instead of $93,84. The difference is only $31,16. That sum with the interest of it should be paid.

According to the agreement of the parties, the defendants must be defaulted, and judgment rendered in favor of the plaintiffs for the sum of two hundred ninety-four dollars and thirty-nine cents, and also the interest on $250 from the ten days after the first Monday in April, 1838, to the second Tuesday of December, 1839, and costs of suit.